SLC

CARLSMITH BALL LLP

| | |
|---|---|
| JAY S. HANDLIN | 8661 |
| DUANE R. MIYASHIRO | 6513 |
| NATHANIEL A. HIGA | 9064 |

ASB Tower, Suite 2200
1001 Bishop Street
Honolulu, HI 96813
Tel No. 808.523.2500
Fax No. 808.523.0842

Attorneys for Plaintiff
PACIFIC LIGHTNET, INC.
dba WAVECOM SOLUTIONS

1ST CIRCUIT COURT
STATE OF HAWAII
FILED

2011 APR 25 PM 2:32

J. KUBO
CLERK

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | |
|---|---|
| PACIFIC LIGHTNET, INC. dba WAVECOM SOLUTIONS, a Hawai'i corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MCI COMMUNICATIONS SERVICES, INC. dba VERIZON BUSINESS, a Delaware corporation; and DOES 1 through 10,<br><br>Defendants. | CIVIL NO. 11-1-0814-04  VLC<br>(Contract)<br><br>COMPLAINT; SUMMONS |

### COMPLAINT

Plaintiff Pacific Lightnet, Inc. dba Wavecom Solutions ("**Wavecom Solutions**"), by and through its attorneys, hereby files its Complaint and alleges and avers as follows:

### PARTIES

1.  Plaintiff Wavecom Solutions is a Hawai'i corporation with its principal place of business in the City and County of Honolulu, State of Hawai'i.



Exhibit "A"

2.     Defendant MCI Communications Services, Inc. dba Verizon Business is a Delaware corporation licensed to do business and doing business in the State of Hawaiʻi. MCI Communications Services, Inc., which provides telecommunications services to businesses and residential customers, among others, does business under the name, and is referred to herein as, **"Verizon Business."**

3.     Defendants Does 1-10 (collectively **"Doe Defendants"**) are sued herein under fictitious names for the reason that their true names and identities are unknown to Wavecom Solutions, but they are connected in some manner with Defendant Verizon Business and/or were its officers, agents, servants, employees, employers, representatives, co-venturers, associates, vendors, suppliers, manufacturers, sub-contractors or contractors, and/or owners, lessees, assignees, licensees and/or designers of Defendant Verizon Business and/or were in some manner presently unknown to Wavecom Solutions engaged or involved in the activities, omissions and/or other wrongful conduct alleged herein and/or were in some manner responsible for the damages to Wavecom Solutions as alleged herein, and that their true names, identities, capacities and/or responsibilities are currently unknown to Wavecom Solutions or its attorneys due to the limited discovery powers afforded Wavecom Solutions prior to instituting suit. Wavecom Solutions has diligently and in good faith attempted to ascertain the identities of possible Doe Defendants by, *inter alia*, reviewing the IRU Agreement, described below, and related documents that form the basis for this lawsuit. Wavecom Solutions requests leave to amend this Complaint pursuant to Rule 17(d) of the Hawaiʻi Rules of Civil Procedure to show the true names and capacities, activities and/or responsibilities of the Doe Defendants when the same have been ascertained.

2

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this civil action pursuant to Haw. Rev. Stat. § 603-21.5.

5. Venue in this Court is proper pursuant to Haw. Rev. Stat. § 603-36 because the claims for relief arose in this circuit.

## FACTS

6. Verizon Business and Wavecom Solutions are the parties to an indefeasible right of use, or IRU, agreement dated as of August 7, 2009 (the "**IRU Agreement**").

7. The IRU Agreement was drafted by Verizon Business through its Assistant General Counsel Robert Chozick.

8. The IRU Agreement granted Verizon Business exclusive use of telecommunications fibers to be built and owned by Wavecom Solutions within designated system routes, in exchange for which Verizon Business agreed to pay Wavecom Solutions total compensation of $3.15 million (the "**IRU Fee**").

9. Specifically, the IRU Agreement called for Wavecom Solutions to provide Verizon Business with two separate, route-diverse dark fiber paths between downtown Honolulu and Mililani. Either path would independently be sufficient to enable Verizon Business to provide its end customer, Verizon Wireless, with live telecommunications service between downtown Honolulu and Verizon Wireless's contemplated mobile switching center in Mililani. Upon completion of both fiber paths, the two paths would give Verizon Business system redundancy.

10. During negotiations with Wavecom Solutions, Verizon Business advised that it wanted to be able to provide live service to its end customer, Verizon Wireless, within 12 months of the contract date. Wavecom Solutions responded that it could not guarantee delivery of both

3

fiber paths within 12 months, but agreed to use commercially reasonable efforts to do so. Verizon Business asked to have the fiber paths delivered in two parts. While the contract was still under negotiation, Verizon Business revised the draft to reflect its agreement to accept such two-part delivery of the fiber paths, with the initial path referred to in Exhibit B of the IRU Agreement as the "interim deliverable" (the "**first route**"), and the second path to be delivered thereafter (the "**second route**"). Delivery of the first route in or around 12 months from the time of contract would have enabled Verizon Business to go live with service between downtown Honolulu and Mililani at that time, even if the second route was not completed yet. This two-part delivery schedule is embodied in the final, executed IRU Agreement.

11. After the contract was executed, Wavecom Solutions began performing, including hiring additional personnel to perform the work called for in the contract, and Verizon Business made its first two required payments under the IRU Agreement, totaling $1.575 million.

12. Wavecom Solutions's performance was in compliance with the IRU Agreement, and Wavecom Solutions remained willing and able to satisfy all of its obligations under that contract.

13. However, after Wavecom Solutions had been performing under the IRU Agreement for more than three months, Verizon Business advised for the first time that its end customer, Verizon Wireless, was reassessing its need for Wavecom Solutions's build of the two fiber paths.

14. Specifically, on November 18, 2009, Verizon Business told Wavecom Solutions in writing to "PLACE PROJECT ON HOLD PENDING VZW [*i.e.*, Verizon Wireless] COMMITMENT" and to "cease all activity on this project until after a decision is made by VzW regarding the need for this build."

4

15. Given that Verizon Wireless was not a party to the IRU Agreement, Verizon Business could not rely upon Verizon Wireless's views and decisions as a basis for either stopping work or terminating the IRU Agreement.

16. Wavecom Solutions knew that Verizon Business had no contractual right to instruct it to cease work on the project, and also knew that stopping work would have made it impossible for Wavecom Solutions to deliver the first route, the second route, or both routes in the requested time frame. In addition, Verizon Business had not provided Wavecom Solutions with any formal notice of default, as the contract required Verizon Business to do if it believed Wavecom Solutions was in breach of the IRU Agreement. For these reasons, Wavecom Solutions's personnel continued working on the project.

17. On March 1, 2010, Verizon Business for the first time gave Wavecom Solutions formal notice that it contended Wavecom Solutions was in breach; in that communication, Verizon Business advised that it was unilaterally terminating the contract and would not pay Wavecom Solutions any portion of the remaining $1.575 million balance of the IRU Fee.

18. Verizon Business terminated the IRU Agreement despite the contract's express statement that there was no termination right thereunder.

19. Section 4.03 of the IRU Agreement states: "Unless earlier terminated in accordance with this IRU Agreement, the IRU shall terminate at the expiration of the Term." (The "Term" is, collectively, the 20-year Initial Term plus any Renewal Term.)

20. Under the contract's provision discussing "Default," Section 13.02 states: "There shall be no termination for default."

21. Having nonetheless terminated the contract, Verizon Business is in clear and substantial breach of the IRU Agreement.

22. Verizon Business attempted to justify its termination of the IRU Agreement by claiming that, after the contract was executed, Wavecom Solutions changed the time frame for delivery of the fibers from 12 months to 18-24 months.

23. In fact, the IRU Agreement contains no fixed delivery date for the fibers.

24. Having breached the contract, Verizon Business has wrongfully refused to pay Wavecom Solutions the remaining balance of the IRU Fee, *i.e.*, $1.575 million.

25. By withholding the $1.575 million balance of the IRU Fee, Verizon Business has breached a material provision of the IRU Agreement.

26. On March 18, 2010, Wavecom Solutions provided Verizon Business with notice that Verizon Business had failed to perform its obligations and to observe the terms and conditions of the IRU Agreement by terminating the contract without justification and by failing to pay the amounts remaining due thereunder.

27. Verizon Business's demand that work on the project cease and its subsequent termination of the IRU Agreement continued uncured for a period of more than thirty (30) days after Verizon Business received written notice of such breach, constituting a material default under Section 15.01 of the IRU Agreement. Verizon Business has never cured those breaches.

28. Verizon Business's failure to pay the amounts remaining due under the IRU Agreement continued uncured for more than fifteen (15) days after Verizon Business received written notice of such breach, constituting a material default under Section 15.01 of the IRU Agreement. Verizon Business has never cured that breach.

29. Under Section 11.01 of the IRU Agreement, "In any action between the Parties to enforce any material provision of this IRU Agreement, the prevailing Party shall be entitled to recover its legal fees and court costs (including attorneys' fees, expert witness fees, and costs and

4834-7760-0008.4.063976-00004

expenses of investigation and litigation) from the non-prevailing Party in addition to whatever other relief a court may award."

30. Section 11.01 provides that the IRU Agreement is governed by New York law.

31. As set forth in N.Y. CPLR § 5004, the legal rate for prejudgment interest is 9 percent per annum.

## COUNT I
### (Breach of Contract)

32. Wavecom Solutions repeats and incorporates, as if fully set forth herein, the allegations contained in paragraphs 1 through 31 of this Complaint.

33. The IRU Agreement is a legally binding contract between Wavecom Solutions and Verizon Business.

34. Wavecom Solutions performed or was willing and able to perform all of its obligations under the IRU Agreement.

35. Verizon Business breached the terms and conditions of the IRU Agreement by first demanding that Wavecom Solutions cease all activity on the project, then unilaterally terminating the IRU Agreement, and failing to pay Wavecom Solutions the $1.575 million balance of the IRU Fee.

36. Verizon Business's refusal to pay the balance of the IRU Fee breached a material provision of the IRU Agreement.

37. As a direct and proximate result of Verizon Business's breaches of the IRU Agreement, Wavecom Solutions has been damaged in an amount to be proven at trial, including but not limited to the unpaid balance of the IRU Fee and Wavecom Solutions's lost opportunity costs.

7

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

38. Wavecom Solutions repeats and incorporates, as if fully set forth herein, the allegations contained in paragraphs 1 through 37 of this Complaint.

39. The IRU Agreement is a valid, enforceable contract between Wavecom Solutions and Verizon Business, supported by adequate consideration and assented to by Wavecom Solutions and Verizon Business.

40. At all times relevant hereto, Verizon Business had a duty to perform the IRU Agreement in good faith such that Wavecom Solutions was not deprived of the benefits of the IRU Agreement.

41. By instructing Wavecom Solutions to cease all activity on the project and advising that Verizon Business no longer needed the capacity of that project, Verizon Business denied Wavecom Solutions the opportunity to complete the additional performance milestones that were the preconditions for Verizon Business to pay the remaining portions of the IRU Fee.

42. As a proximate result of Verizon Business's acts and omissions, Wavecom Solutions has suffered damages in an amount to be proven at trial, including but not limited to the unpaid balance of the IRU Fee and Wavecom Solutions's lost opportunity costs.

## COUNT III
### (Unfair Competition Under Haw. Rev. Stat. Chapter 480)

43. Wavecom Solutions repeats and incorporates, as if fully set forth herein, the allegations contained in paragraphs 1 through 42 of this Complaint.

44. Verizon Business's claim that, after the contract was executed, Wavecom Solutions changed the time frame for delivery of the fibers from 12 months to 18-24 months was false and was known to be false by Verizon Business at the time it was made.

4834-7760-0008.4.063976-00004

45. Verizon Business's false claim that, after the contract was executed, Wavecom Solutions changed the time frame for delivery of the fibers was made in a wrongful attempt by Verizon Business to avoid paying Wavecom Solutions expectancy damages for Verizon Business's breach of contract.

46. Verizon Business has refused, and continues to refuse, to pay Wavecom Solutions what it is owed under the IRU Agreement based upon the false claim that, after the contract was executed, Wavecom Solutions changed the time frame for delivery of the fibers.

47. Verizon Business's false claim is baseless, was made in bad faith, and is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

48. Verizon Business's false claim harms competition between businesses by allowing Verizon Business to breach its contracts with impunity, thereby unfairly advantaging Verizon Business by enabling it to retain funds that it should and otherwise would have had to pay in expectancy damages.

49. Verizon Business's false claim has injured Wavecom Solutions's business or property by denying Wavecom Solutions the proceeds that would have been realized through performance of the IRU Agreement.

50. As a proximate result of Verizon Business's false claim, Wavecom Solutions has suffered damages in an amount to be proven at trial.

51. Wavecom Solutions is therefore entitled to damages under Haw. Rev. Stat. §§ 480-2 and 480-13.

## PRAYER FOR RELIEF

WHEREFORE, Wavecom Solutions demands judgment against Defendants and respectfully prays for relief as follows:

    a. for special and general damages in an amount to be proven at trial;

9

4834-7760-0008.4.063976-00004

  b. for treble damages under Haw. Rev. Stat. § 480-13(a)(1);

  c. for punitive damages in an amount to be determined at trial;

  d. for attorneys' fees and costs, including but not limited to attorneys' fees, expert witness fees, and costs and expenses of investigation and litigation, all as expressly provided for in Section 11.01 of the IRU Agreement;

  e. for pre-judgment and post-judgment interest; and

  f. for such other and further relief as the Court may deem just and proper.

DATED: Honolulu, Hawai'i, April 25, 2011.

*[signature]*

JAY S. HANDLIN
DUANE R. MIYASHIRO
NATHANIEL A. HIGA

Attorneys for Plaintiff
PACIFIC LIGHTNET, INC.
dba WAVECOM SOLUTIONS

4834-7760-0008.4.063976-00004

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| PACIFIC LIGHTNET, INC. dba WAVECOM SOLUTIONS, a Hawai'i corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MCI COMMUNICATIONS SERVICES, INC. dba VERIZON BUSINESS, a Delaware corporation; and DOES 1 through 10,<br><br>Defendants. | CIVIL NO. _____<br><br>SUMMONS |

## SUMMONS

STATE OF HAWAI'I

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and required to serve upon Jay S. Handlin, Duane R. Miyashiro, Nathaniel A. Higa, attorneys for Plaintiff, whose address is Carlsmith Ball LLP, ASB Tower, Suite 2200, 1001 Bishop Street, Honolulu, HI 96813, an answer or response to the Complaint, which is attached. This action must be taken within twenty (20) days after service of this summons upon you, exclusive of the day of service.

If you fail to make your answer or response within the twenty day time limit, judgment by default will be taken against you for the relief demanded in the Complaint.

**This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a Judge of the above-entitled court permits in writing on this summons, personal delivery during those hours.**

4834-7760-0008.4.063976-00004

A failure to obey this summons shall result in an entry of default judgment against the disobeying party.

DATED: Honolulu, Hawai'i, _____ APR 2 5 2011 _____.

_____
CLERK OF THE ABOVE-ENTITLED COURT

2